## HARRY HONEYWELL v. THE STATE.

### No. 1839. Decided February 15, 1899.

**Homicide—Instrument or Means Used—Charge—Aggravated Assault.**

On a trial for murder, where the evidence showed a sudden altercation between the parties on Saturday; that defendant struck deceased upon the side of the head with a 2½-pound rock, knocking him down, and from the effects of which he died the following Wednesday, and it appeared there was no serious external injury apparent upon the head and no proof that the rock was a deadly weapon, nor as to the force with which it was thrown; Held, the court should in accordance with the provisions of the Penal Code, article 717, have instructed the jury, in effect, that they could only convict defendant of murder or manslaughter if the instrument was one likely to produce death, or from the manner of its use such was evidently the intention of the defendant; and also, that if said instrument was not a deadly weapon, they would not presume that death was designed by defendant; and Held further, that it was error, upon the facts stated, for the court to fail to instruct, and to fail and refuse requested instructions upon aggravated assault.

APPEAL from the District Court of Hill. Tried below before Hon. J. M. HALL.

Appeal from a conviction for murder in the second degree; penalty, five years imprisonment in the penitentiary.

The indictment charged appellant with the murder of Pearl V. Adams, on the 19th of December, 1896, by hitting him with a rock.

The facts attendant upon the homicide are concisely but sufficiently stated in the opinion.

No briefs on file for appellant.

*Robt. A. John,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at imprisonment in the penitentiary for a term of five years, and he appeals.

The circumstances attending the homicide show that the killing was committed at night, in a casual difficulty which occurred between appellant and deceased. Appellant was a boy about 18 years old, and the deceased about 17 years old; the latter being somewhat larger than the former. It appears that a number of boys were in a printing office situated in the rear of a grocery store, attending to some business, and among the number was the deceased, Pearl V. Adams. He had occasion to leave the room, and on his return defendant, who was stand-

ing near the door, remarked to him, "If you go in there, I will pull you out backwards." Deceased replied, "If you do, I will slap you." Deceased then started in the door. According to some of the witnesses, defendant caught him by the coat and pulled him back twice; and, according to others, only once. The deceased, according to some of the witnesses, slapped with his left hand in the direction of defendant; and, according to others, he slapped him; and, according to some of defendant's witnesses, he both slapped and kicked him. Appellant immediately retreated a few steps from the door, and threw a rock at the deceased, who was at the time about entering the door, striking him on the left side of the head, and knocking him down. Deceased remained unconscious for some time, and lingered until the following Wednesday, and died from the effects of the wound. The only evidence of any malice between the parties was some remarks made by appellant, as testified to by one of the State's witnesses, in regard to deceased, on the Saturday evening preceding the homicide. According to this witness, appellant stated to him "that Pearl had been doing him some dirt, 'and if I get a chance at him I am going to do him up.'" And after the difficulty another witness asked him if he knew how badly he had hurt deceased; to which he replied, "he did not know, and did not give a damn." Outside this testimony, the relations existing between the boys appears to have been friendly. As the turning point of this case is as to the action of the court in failing to give a charge on aggravated assault, we will give substantially the testimony with relation to the weapon and character of the wound, as they have an immediate bearing on said issue. The witnesses for the State show that appellant threw a rock at deceased, and that same, after striking deceased, fell on the floor in said printing office. The rock found there was produced and identified as the rock with which deceased was struck. This rock was shown to be rather jagged, and, according to one witness, to weigh about 2½ pounds. None of the witnesses testify directly as to the force with which defendant appeared to throw the rock. The rock, as stated before, struck appellant over the left ear, inflicting, as one witness stated, a glancing wound. No cut was produced on the head, but a slight cut was on the ear, and the head was bruised a little. Another physician testified, substantially, that the wound was a scalp wound; the skin on the head was cut a little; it was a bruised wound, and made by a blunt instrument of some kind. There was no depressed portion of the skull where it struck, and the outer tissues of the skull were all in place, so that he did not find any depression on the skull. The external injury, so the physician states, would not have caused death, but there must have been an internal injury; that inflammation of the brain, caused by the wound, must have produced death. Now, on this state of facts the court instructed the jury on murder in the first and second degrees, manslaughter, and self-defense, but gave no charge on aggravated assault. A charge was requested on this subject; and thus the only question to be considered in this cause is presented.

We would note in this connection that the court gave this article (717) of the Penal Code in charge, to wit: "The instrument or means by which the homicide is committed are to be taken into consideration in judging of the intent of the party offending. If the instrument be one not likely to produce death, it is not to be presumed that death was designed, unless from the manner in which it was used such intention evidently appears." This is contained in the main charge, but is nowhere applied to any facts in this case, nor is anything further said in regard to it. Now, it occurs to us that this article of the statute contains the keynote to appellant's defense. That is, no witness testified to the deadly character of the rock, the weapon used in committing the assault. The only description is that it was rough and jagged, and, according to one witness, that it weighed about $2\frac{1}{2}$ pounds. Now, this not being what would ordinarily be considered a deadly weapon, then the intent to kill must be gathered from the manner in which it was used; and the evidence must show that the manner in which it was used made it evident that appellant intended to kill deceased. And, as before stated, when we look at this phase of the case, this was an issue before the jury, for no witness testified as to the force with which appellant appeared to throw the rock; the evidence on this point simply being that he threw the rock, it struck deceased, and he fell. This question was so thoroughly discussed in Shaw v. State, 34 Texas Criminal Reports, 435, that we only deem it necessary to refer to that case. The state of facts in that case was greatly similar to the facts in this case, and the reasoning of the court in that case is directly applicable to the facts of this case. In our opinion, so far as the defense of appellant was concerned, the court should have made it depend on article 717, and should have instructed the jury, in clear and explicit terms, that they could only convict defendant of murder or of manslaughter in case they believed that the instrument was one likely to produce death; or, if they did not so believe, that, from the manner in which it was used by appellant, such intention evidently appeared; and they should have been further instructed that, if they did not believe that the weapon used by appellant was of a deadly character,—that is, likely to produce death,—they would not presume against him that death was designed; and, in such case, unless they found beyond a reasonable doubt that, from the manner in which said instrument was used, his intention to take life evidently appeared, that then they would acquit him of any grade of felonious homicide, and, if they believed that the assault made by him was unlawful, they would find him guilty of an aggravated assault.

Appellant assigns as error that the jury found appellant guilty under the first count in the indictment, and that count fails to charge that the homicide was committed with malice aforethought. The original indictment is not before us, and of course we can not assume that it is in that condition. However, if the indictment contains any defect

of that character, a new bill should be found. For the error above discussed with reference to the charge of the court, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

DAVIDSON, Presiding Judge, absent.