## GEORGE CARR V. THE STATE.

### No. 4328.  Decided December 27, 1916.

**1.—Murder—Instruments Used—Grand Jury.**

Where, upon trial of murder, the indictment alleged that the cutting was done with a sharp instrument, a better description of which was unknown to the grand jurors, and there was no attempt to show that the grand jury used any diligence to ascertain the kind of instrument used, and as it is necessary in cases of murder that the character of instrument used, if it can be obtained be alleged, a new indictment should be found.

**2.—Same—Charge of Court—Deadly Weapon—Defensive Theory.**

Where, upon trial of murder, the evidence did not indicate that the instrument used was a deadly weapon, and that the thrust by the defendant was more accidental than intentional, the court should have charged with reference to the presumption arising from the use of the weapon, and should furthermore have submitted the theories of the defendant in as favorable a view as the testimony justified. Following Huddleston v. State, 70 Texas Crim. Rep., 260, 156 S. W. Rep., 1168, and other cases.

**3.—Same—Evidence—Res Gestae—Same Transaction.**

Upon trial of murder, the court should have admitted testimony offered by the defendant which showed the res gestae of the transaction.

Appeal from the District Court of Sabine.  Tried below before the Hon. A. E. Davis.

Appeal from a conviction of murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*J. W. Minton* and *Beeman Strong,* for appellant.—On question of court's charge on presumptions by character of instruments used: Huddleston v. State, 70 Texas Crim. Rep., 260, and cases cited in opinion. On question of res gestae: Black v. State, 8 Texas Crim. App., 329; McPhail v. State, 9 id., 164; Jeffries v. State, 9 id., 598; Thompson v. State, 19 id., 593; Weathersby v. State, 29 id., 278; Hancock v. State, 47 Texas Crim. Rep., 3; Fleming v. State, 54 id., 339; Eggleston v. State, 59 Texas Crim. Rep., 542.

*C. C. McDonald,* Assistant Attorney General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of murder, his punishment being assessed at five years confinement in the penitentiary.

So far as the application of the law to the questions presented for revision is concerned, the facts may be briefly stated: The killing of deceased occurred at the house of Capps, a brother-in-law of appellant. Appellant was visiting Capps and family, Capps' wife being the sister of appellant. There was a social function in progress. Deceased, Royal Jordan, and his brother, Elbert, were present; both of them were more or less drinking; Elbert considerably intoxicated. In the room where the guests were assembled Elbert Jordan became boisterous. Capps

insisted upon better behavior on his part, to which Elbert Jordan did not accede. Capps finally told him he must desist or get out. Some of the gentlemen present took Elbert Jordan from the house out into the yard. Deceased came in from the yard onto the gallery when this occurred. Elbert Jordan also returned to the gallery about the time of the trouble. Deceased was standing on the gallery where other people were also, some of the testimony showing others were close to the deceased, while some of the testimony tended rather to isolate him a few feet. The witnesses also differ as to whether deceased did or said anything. There is testimony showing that he did not, while there is evidence also to the effect that he threatened to take the lives of one or more of them. The State's evidence is to the effect that appellant started from the door across the gallery, passing near Elbert Jordan, and two of the witnesses testified they saw him strike with his right hand or arm; at least saw his right arm go out in the direction of deceased and that he was within arm's reach. None of them saw him with any instrument of any sort in his hand. The evidence shows without question that deceased was struck by a sharp instrument of some character in the right groin, the wound being from two to three inches long and at its greatest depth about one inch. The instrument seems to have severed or punctured an artery from which deceased died from bleeding.

The language in the indictment is this: "by then and there cutting him with a sharp instrument, a better description of which the grand jury is unable to give, and the name of sharp instrument is unknown to the jurors." The only description of the instrument on the trial was that the wound was inflicted or could have been inflicted by a sharp instrument. There was no attempt, so far as the record shows, to show that the grand jury used any diligence to ascertain the nature or kind of instrument, or that by reason of diligence they could or could not have ascertained the character or kind of instrument used. This is made a question for revision. Under the authorities we are of opinion that the grand jury should have charged the character of instrument used if they could have obtained the information. This being a charge of murder, the character of the instrument is usually necessary to be charged, and especially so if the kind and character used could be obtained. Upon another trial this question should be met by proper evidence, and if the character of the instrument can be ascertained by the grand jury, another indictment should be obtained setting forth and describing it.

Two or three questions are presented with reference to charges given and refused, and omissions in the charge. It is contended that articles 1147 and 1149 of the Revised Penal Code of 1911 should have been given in charge to the jury; and in this connection that the jury should also have been instructed with reference to the presumption arising from the use of a weapon. Under the facts of this case the court

erred in omitting charges on these matters, and also in refusing the special requested instructions.

There is nothing to indicate in this record that the instrument was a deadly one, and in fact there is no testimony as to what kind of instrument was used, except it was a sharp one. If the weapon used was not a deadly one, it would not be presumed that appellant intended to kill, unless as under the circumstances stated in those two articles. The wound does not indicate it. From all the testimony, if appellant is the party who inflicted the wound, it was done by throwing out his arm and striking as he passed deceased. He did not stop, but went off the gallery. It was the only wound on the body, and if appellant struck it, he did it as stated. That the wound proved to be fatal can be accounted for in various ways without imputing to appellant the purpose and intent to kill. If appellant is the party who inflicted the wound, it seems to have been a casual wound inflicted just in passing deceased, and the fact it happened to strike the artery was more accidental than intentional. It is a well known rule that wherever facts are shown in submitting the theories of the defendant, a favorable view must be taken by the court in his charges; that is, the facts must be submitted under the charge so as to present favorably for the defendant his side of the case, or any weakness in the testimony that might result by the verdict of the jury in his favor. These questions have been so often decided as well as fixed by the statute it would seem hardly necessary to further discuss them. Arts. 1147 and 1149, Penal Code, 1911; Huddleston v. State, 70 Texas Crim. Rep., 260, 156 S. W. Rep., 1168; Reeves v. State, 74 Texas Crim. Rep., 502, 168 S. W. Rep., 860; Dawson v. State, 70 Texas Crim. Rep., 8, 155 S. W. Rep., 266; Wilson v. State, 90 S. W. Rep., 312; Craiger v. State, 48 Texas Crim. Rep., 500; Hightower v. State, 56 Texas Crim. Rep., 248; Vinson v. State, 55 Texas Crim. Rep., 490; Crow v. State, 55 Texas Crim. Rep., 200; Lee v. State, 44 Texas Crim. Rep., 460; Martinez v. State, 35 Texas Crim. Rep., 386; Washington v. State, 53 Texas Crim. Rep., 480, 110 S. W. Rep., 751; Danforth v. State, 69 S. W. Rep., 159; Shaw v. State, 34 Texas Crim. Rep., 435, 31 S. W. Rep., 361; Honeywell v. State, 40 Texas Crim. Rep., 199, 49 S. W. Rep., 586; Fitch v. State, 37 Texas Crim. Rep., 500, 36 S. W. Rep., 584; Swink v. State, 32 Texas Crim. Rep., 530, 24 S. W. Rep., 893; Branch's Crim. Law, sec. 434. We have discussed these charges and matters in a general way, without going into a specific enumeration of the different charges and questions.

A bill of exceptions recites that while Mrs. Capps was testifying the defendant offered to prove by her "That just as Royal Jordan, deceased, was cut, Elbert Jordan, his brother, immediately entered the house, being the home of the sister of defendant, and assaulted or undertook to assault some of the occupants of said house, and that said Elbert Jordan was drunk and seemed to be very mad," etc. This was at the time of the trouble. The parties had barely separated at the time

he entered the room. The deceased had just been wounded. This was a part and parcel of the transaction and was recognized by the court in his charge to the jury on the law of self-defense. He submitted the defensive theory that appellant had the right to defend against both Royal Jordan and Elbert Jordan. The time intervening was so short that it could hardly be described in time. It was a part of the res gestae, and showed the condition of the situation and what occurred at once. Upon another trial this testimony should be admitted. See Branch's Crim. Law, sec. 339.

There are some other questions in the case, but they seem to be a part of those already decided.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*