## JOHN CONNELL V. THE STATE.

### No. 2679. Decided May 4, 1904.

**1.—Evidence—Dying Declarations.**

Where it appeared that witness had heard that deceased had been hurt and went over to his house to see him, and upon reaching same found deceased very weak, who after calling him to his bedside asked witness to remain with him to the end, and a few minutes thereafter made a statement to witness and then soon became unconscious and remained so until he died, a sufficient predicate for the introduction of such statement had been laid.

**2.—Same—Not Opinion Merely.**

Where the dying declaration of deceased in referring to his injury was that his son John had done it and that he had no cause for doing it, such declaration was not merely an opinion, belief or conclusion of the deceased, or incomplete and fragmentary, but was admissible in evidence, in connection with other statements of deceased as to the manner of sustaining his injury.

**3—Charge of the Court—Express and Implied Malice.**

Where the defendant had been acquitted of murder in the first degree, it is not reversible error in a charge not to draw the distinction between murder in the first and second degrees, although the evidence might establish his guilt of murder in the first degree on a subsequent trial.

**4.—Same—Murder in Second Degree—Manslaughter.**

Where there is one charge which embraces a definition of adequate cause and applies the law on that subject to the evidence, and there is another on implied malice, the jury were properly informed as to the distinction between manslaughter and murder in the second degree.

**5.—Same—Intent to Kill—Deadly Weapon.**

Where the evidence showed that the weapon used by defendant was a dirk knife and of a deadly character, used with deadly effect, it was not required, in a charge on manslaughter, to instruct the jury, that notwithstanding they believed the weapon to be a deadly one, yet if they believed that defendant had no intent to kill deceased and that he did kill him in a sudden transport of passion without adequate cause, he would only be guilty of manslaughter.

**6.—Same—Affirmative Instruction.**

Where the court charges that if defendant with a deadly weapon, etc., reasonably calculated and likely to produce death by the mode and manner of its use, in a sudden transport of passion aroused by adequate cause, etc., did cut, etc., to find him guilty of manslaughter, the same was an affirmative presentation of the offense of manslaughter.

**7.—Same—Adequate Cause.**

Where the court instructed the jury that an assault and battery causing pain was adequate cause, and that while the provocation must arise at the

time of the homicide, the jury could look to any other circumstance in evidence to enable them to judge of the provocation, and that if they believed appellant's mind became excited on account of any adequate cause as defined, etc., to find him guilty of manslaughter, it was sufficient.

Appeal from the District Court of Bell. Tried below before Hon. John M. Furman.

Appeal from a conviction of murder in the second degree; penalty, fifteen years imprisonment in the penitentiary.

This case was before this court on a former appeal, which contains a statement of the facts of the case, as they substantially appear in the present record. Connell v. State, 45 Texas Crim. Rep., 142.

*Henderson & Freeman, Winbourne Pearce,* and *J. B. McMahon,* for appellant.—There must be a limit somewhere to the character of the evidence which may be placed before a jury under the guise of a dying declaration. Such testimony ordinarily has much greater influence with a jury than the testimony of any living witness, and yet the accused with respect to such testimony is at a great disadvantage. He not only has no opportunity for cross-examination to test the veracity of the witness or for further examination to develop fully the attendant circumstances, but he is subjected to the frailty of memory and of prejudice on the part of the witness who undertakes to recite the dying statement. Notwithstanding these adverse conditions such testimony, when it is really testimony, is wisely admitted as evidence before the jury. So the true rule as to its admissibility seems to be this: Is it testimony? Could the deceased if he were present as a witness before the jury testify to the statement? If so, it is admissible against the accused; if not, it is inadmissible. This principle is aptly stated in the recent case of Bateson v. State, decided in this honorable court on the 23d of March, 1904. The circumstances in the Bateson case were very similar to those in this case, and this honorable court in discussing that case holds that the admission of testimony of the character here complained of was error, the language of the court being as follows: "We do not believe it was competent for the State to prove, as was done by one witness, that deceased told him to tell his wife good-by, and by another witness, 'They murdered me without cause.' As to the first statement, it does not appear to have been an issue as to whether deceased at the time he made this dying declaration was not conscious of approaching death. This appears to have been taken for granted. At any rate, this was a matter for the court and not for the jury, in passing on the admissibility of the testimony. A witness can only state matter involved in a dying declaration to which deceased might testify if alive, and a witness on the stand could not give in evidence matters of opinion. Roberts v. State, 5 Texas Crim App., 141; Pierson v. State, 21 Texas Crim. App., 141; Sims v. State, 36 Texas Crim. Rep., 154; Williams v. State, 40 Texas Crim. Rep., 497, 570.

On question of intent to kill: Thompson v. State, 24 Texas Crim. App., 383; Fitch v. State, 37 Texas Crim. Rep., 500; State v. Banks,

73 Mo., 592; State v. Jones, 14 Mo., 589; 1 Bishop Crim. Law, secs. 328, 334; 21 Am. and Eng. Enc. of Law, 2 ed., 149; Penal Code, art. 717 et seq.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of fifteen years; hence this appeal. This case was before us on a former appeal and was reversed. The facts therein stated are substantially as proven on the present trial. See Connell v. State, 75 S. W. Rep., 512, 45 Texas Crim. Rep., 142.

The State proved the dying declarations of deceased, by witness Yarbrough, as follows: "That he heard of deceased being hurt and went over to his house to see him. When witness arrived deceased had been removed from the point outside of his yard into the house and was lying on his bed in the house; his wounds had been dressed by the physicians and deceased was very weak. He called witness to his bedside and asked him to stay with him to the end; and witness told him he would. Deceased then made a statement to witness, and a few minutes afterwards became unconscious and so remained until he died. Defendant objected to the introduction of said statement as a dying declaration because no sufficient predicate had been laid for its introduction; and said objection was overruled, and defendant excepted to the ruling, and said witness was permitted and did testify, over defendant's objection, as follows: 'Deceased told me his son John had done it, and that he had no cause for doing it.' And defendant further objected to said evidence because same was not the statement of any fact or facts by deceased, but was merely the statement of the opinion or belief or conclusion of deceased, and because same was incomplete and fragmentary." The court in explaining this bill refers to the evidence as the predicate for the introduction of the testimony; and we think that this was ample. We also hold that the statement by the declarant was admissible. Pearson v. State, 18 Texas Crim. App., 524; Roberts v. State, 5 Texas Crim. App., 141; Sims v. State, 36 Texas Crim. Rep., 154.

Appellant contends that the court's definition of malice and of implied malice is inadequate. In the former trial appellant was acquitted of murder in the first degree, and consequently no higher degree was submitted than murder in the second degree. The court in defining malice and implied malice instructed the jury as follows: "The distinguishing characteristic of murder in the second degree is implied malice aforethought. Malice aforethought includes all those states of mind under which the killing of a person takes place without any cause which will in law justify, excuse or extenuate the homicide. It is a condition of the mind which shows a heart regardless of social duty and fatally bent on mischief, the existence of which is inferred from acts committed or words spoken. Malice in its legal sense denotes a wrongful

act done intentionally without just cause or excuse." In its ordinary legal sense, under the definitions, malice denotes a wrongful act done intentionally without just cause or excuse. When applied to murder, malice aforethought is a condition of the mind which shows a heart regardless of social duty and fatally bent on mischief, the existence of which is inferred from acts done or words spoken. This, as we understand it, is in accord with the authorities. Crook v. State, 27 Texas Crim. App., 198; Martinez v. State, 30 Texas Crim. App., 129; Harrell v. State, 39 Texas Crim. Rep., 204; Cain v. State, 42 Texas Crim. Rep., 210. Implied malice, where that issue is presented as here, must also be defined. So far no affirmative or substantive definition has been given of this character of malice. The definitions usually given are negative, bounded on the one side by express malice, and on the other with circumstances which mitigate or extenuate the homicide or which reduce it to excusable, or negligent homicide. Neyland v. State, 13 Texas Crim. App., 536; McGrath v. State, 35 Texas Crim. Rep., 413; Boyd v. State, 28 Texas Crim. App., 137. In the latter case, Judge Willson for the court, assumed to lay down what he considered to be a proper charge on implied malice, to wit: "Implied malice is that which the law infers from or imputes to certain acts. Thus, when the fact of an unlawful killing is established, and there are no circumstances in evidence which tend to establish the existence of express malice, nor which tend to mitigate, excuse or justify the act, the law implies malice. If, therefore, you believe from the evidence that defendant unlawfully killed deceased, and in doing so did not act under the immediate influence of sudden anger, rage, resentment or terror, arising from an adequate cause; that is, such cause as would commonly produce such passion in the degree that would in a person of ordinary temper render the mind incapable of cool reflection, the killing would be upon malice, and he would be guilty of murder in the second degree." As a general proposition, so far as we are advised, where a charge is given on murder in the second degree, and it is given in the negative form, bounded on the one side by murder in the first degree and on the other by manslaughter, which is based on adequate cause, it is the duty of the court to define adequate cause. See Whitaker v. State, 12 Texas Crim. App., 436; Brunett v. State, 12 Texas Crim. App., 521; Neyland v. State, 13 Texas Crim. App., 536; Childs v. State, 35 Texas Crim. Rep., 573; Scruggs v. State, 35 Texas Crim. Rep., 622; Pollard v. State, 73 S. W. Rep., 953; Thomas v. State, 74 S. W. Rep., 36. In McGrath v. State, 35 Texas Crim. Rep., 413, which is the only exception called to our attention, the court appears to predicate its opinion on the proposition that there was no adequate cause in the case, and the charge defining adequate cause as in manslaughter was not called for. In the majority of the cases above cited, manslaughter was in the case, and necessarily the distinction between murder and manslaughter was required to be sharply drawn. In some of the cases adequate cause was not defined in connection with the charge on murder in the second degree, but a charge on manslaughter being given

in the case, the definition of adequate cause as therein contained was held sufficient—the charge on murder in the second degree contained adequate cause referring to the definition as contained in manslaughter. Here, the jury were instructed that malice aforethought as applied to murder in the second degree, includes all of those states of the mind under which the killing of a person takes place without any cause which will in law justify, excuse or extenuate the homicide. There was here no definition of express malice. And if there was any error it was in failing to give the definition of express malice, so that the jury might be properly informed of the distinction between express and implied malice. No injury could have resulted to appellant on this account, inasmuch as he was acquitted of murder in the first degree. There was no necessity for the court to draw a distinction between murder in the first and second degrees, inasmuch as appellant could have been convicted of murder in the second degree, although the evidence might establish his guilt of murder in the first degree. Fuller v. State, 30 Texas Crim App., 539, and authorities there cited. However, it was necessary for the court to draw the dividing line between murder in the second degree and manslaughter, as that issue was presented in the case. We believe this was adequately done. After instructing the jury upon implied malice, to the effect, "If the killing was in a sudden transport of passion aroused without adequate cause, and not in self-defense, as will be hereinafter defined, and you believe he cut deceased with a deadly weapon, with intent to kill him, he would be guilty of murder in the second degree." In regard to manslaughter the court had already told the jury that implied malice would be inferred when the killing took place without any cause which would in law justify, excuse or extenuate the homicide. (Extenuate in this connection, has the same meaning as mitigate, and refers to a reduction of the grade of the offense as well as to a reduction of the punishment.) In a subsequent instruction of the court defining manslaughter, which embraces a definition of adequate cause and the application of the law on that subject to the facts of the case, there was a sufficient charge on manslaughter, and considering the charge on murder in the second degree and the charge on manslaughter, the jury was properly informed as to the distinction between the two offenses or grades of offense.

Appellant further insists that the court failed to properly instruct the jury in regard to appellant's intent to kill in connection with the charge on manslaughter. It is urged that the jury should have been distinctly told, that notwithstanding they believed the weapon used was a deadly weapon, yet if they believed appellant had no intent to take the life of deceased, and he killed him in a sudden transport of passion without adequate cause, he could only be convicted of manslaughter. In support of his contention we are referred to Thompson v. State, 24 Texas Crim. App., 383; Fitch v. State, 37 Texas Crim. Rep., 500; Perrin v. State, 9 Texas Ct. Rep., 533. While there are some expressions in the first named case, which appear to favor appellant's contention,

yet when examined, neither it nor the other cases mentioned support his view. Our statute makes manslaughter *voluntary* or *intentional* homicide and all our decisions on the subject so construe it. If there is no intention to take life, there is no manslaughter. This intention may be inferred from the use of a deadly weapon. If the weapon is not deadly, the intention to take life can not be inferred, but must evidently appear; and where the weapon is not of a deadly character, the court should always charge article 717, Penal Code. But we know of no case where this article is required to be given in charge, unless the weapon used was not of a deadly character, such as a club, a stick, or a very small knife. Here the uncontroverted testimony shows that the knife used in inflicting the wound which caused the death of deceased was a dirk knife, the blade of which was five and three-fourths inches long, and about seven-eighths of an inch wide, sharp, pointed, and with a keen, sharp edge on both sides; the blade fixed and rigid to the handle, with a guard between the blade and the handle. The doctor describes the wound inflicted as "on the left arm of deceased—the cut being something like the figure seven—the cut being on the front of the arm between the shoulder and the elbow. The flesh was cut through to the bone. The muscle was cut from the front of the bone to the outside, and then the bar of the 7 was cut down the arm to the bone, about parallel with the arm. The wound extended entirely through the arm to the bone, and then through the flesh, reaching the side of the deceased, and there was a cut about a half inch deep farther down the ribs on his side. This wound was made with the same stroke." He further states that deceased bled to death from the effect of the wound. That after he got there and the binding was taken off his arm, no blood issued from it, showing evidently that the blood vessels were exhausted; that he never rallied from the effect of the wound. It will be seen from the above recitation that the weapon used by defendant was of a deadly character, and that it was used with deadly effect; and under none of the authorities was a charge of the character insisted on by appellant required

Appellant insists that the charge on manslaughter was given in the negative form, when he was entitled to an affirmative charge on that subject; and to support this he cites us to Johnson v. State, 43 Texas, 612. We have examined the charge given in that case, and it is not in point. The charge here given was not subject to the vice therein pointed out. Here, after the definition of manslaughter, the court, in applying the law to the facts, told them, substantially, that, if defendant with a deadly weapon or instrument reasonably calculated and likely to produce death by the mode and manner of its use, in a sudden transport of passion aroused by adequate cause, as the same is herein explained, and not in defense of himself against an unlawful attack reasonably producing a rational fear or expectation of death or serious bodily injury, did cut with a knife and thereby kill John Connell, deceased, to

find him guilty of manslaughter. This, as we understand, was an affirmative presentation of the offense of manslaughter.

It is also complained that the court failed, in its charge to the jury applying the law to the facts, to tell them directly that if deceased in the first instance assaulted appellant and struck him a blow which caused him pain, and his passion was aroused thereby, etc., to find defendant guilty of no higher offense than manslaughter. To sustain this contention we are referred to Warthan v. State, 55 S. W. Rep., 55; Griffin v. State, 50 S. W. Rep., 366. These cases are authority for the proposition that, where the adequate causes are those enumerated by the statute, the jury must be instructed as to these adequate causes. It does not appear in either of said cases that the court informed the jury that an assault causing pain was by law adequate cause to produce passion. Here, however, the court told the jury that an assault and battery causing pain was adequate cause. And further told them, in that connection, that while the provocation must arise at the time of the homicide, they could look to any other circumstance in evidence to enable them to judge of the provocation; and subsequently instructed the jury, if they believed appellant's mind became excited on account of any adequate cause, as before defined, and he was thus rendered incapable of cool reflection, to find defendant guilty of manslaughter. We believe this was sufficient.

Appellant contends that the charge on self-defense was given in the negative form. We do not so read the charge. After defining defendant's rights in that respect, the court properly applied the law to the facts in an affirmative manner.

*Affirmed.*

### ON REHEARING.

### June 24, 1904.

HENDERSON, JUDGE.—This case was affirmed at a previous day of the term, and now comes before us on motion for rehearing. There is only one question necessary to be considered. Appellant insists that we erred in the original opinion in holding that the dying declarations of deceased proven by the witness Yarbrough were admissible, his contention being that the witness did not detail any fact in deceased's dying declaration about which deceased could have testified had he been alive and a witness on the stand. The bill of exceptions on this subject shows that the State introduced witness Yarbrough, and after proving by him that he went to see deceased the night after he was wounded, found him very weak, called witness to his bedside, and asked him to stay with him to the end; and witness told him he would. Deceased then made a statement to witness and a few minutes afterwards became unconscious and so remained until he died. Witness stated, "Deceased told me his son John had cut him, and he had no cause to do it." This was objected to on the ground that no sufficient predicate had been

laid for its admission; also because it was not the statement of any fact or facts by deceased, but was merely the statement of his opinion or conclusion and no facts were stated in that connection on which it was based; and because the same was incomplete and fragmentary, and an expression of pain, and denunciation of defendant by deceased which was calculated to confuse, mislead and improperly prejudice defendant with the jury. The court in explaining the bill said that all the evidence heretofore introduced in the trial was considered by him in the admission of the testimony. It occurs to us that the predicate was sufficiently laid. Not only by the witness himself, but by other witnesses, that deceased was then conscious of approaching death.

The other question is fraught with more difficulty. There are decisions seemingly both ways on the subject. We understand all the authorities to agree on the rule enunciated by appellant; that is, that dying declarations are only admitted as to such facts as deceased would have been authorized to testify to had he been present at the trial. See Lister v. State, 1 Texas Crim. App., 739; Warren v. State, 9 Texas Crim. App., 619; Medina v. State, 63 S. W. Rep., 331; Bateson v. State, 10 Texas Ct. Rep., 208. In a number of cases in this State witnesses were permitted to testify to facts under the doctrine of dying declarations, similar in character to the expression of deceased as testified to in this case. In Roberts v. State, 5 Texas Crim. App., 141, the witness was permitted to testify that deceased told him, "Steve Roberts killed me for nothing." And in Pierson's case, 21 Texas Crim. App., 14, the witness was permitted to state: "It was Tom Pierson that shot me while I was on my return from Felix Smith's last night. Bob Pierson was with him. Tom was riding a sorrel blazed-face horse. They had no occasion to shoot me. I had not spoken a word to them; nor had I done anything to either of them." In Sims v. State, 36 Texas Crim. Rep., 154, witness testified under the head of dying declarations, that deceased said: "Sims ought not to have shot me. I did not think that Sims was going to shoot." Appellant's counsel, however, in presenting these cases in support of his contention shows that the witness testifying as to these expressions under the head of dying declarations did so in each case in connection with other statements of deceased, in which facts were adduced concerning the killing; and the opinions given in that connection were not calculated to prove hurtful in said cases. Appellant also refers us to Williams v. State, 40 Texas Crim. Rep., 504, 570, in which the following declaration of deceased was held to be inadmissible: "When they came in I treated them perfectly gentlemanly. They added insult after insult;" and in Bateson v. State, 10 Texas Ct. Rep., 208, this expression was excluded: "They murdered me without a cause;" and that deceased told him to tell his wife good-by. In the last two cases appellant shows the expressions were of an isolated character, not connected with other testimony as in the present case. It may be conceded that the authorities in this State are in some confusion on this subject. The cases may be reconciled, however, on the principle that where opinions of the de-

clarant have been admitted, the record showed, either by the witness himself or by other witnesses, the manner of death, so that his opinion did not stand alone, but is qualified by what had gone before. Applying this rule to the case at bar, it appears that it was shown by a number of witnesses what deceased said as to how the difficulty came up, in which he lost his life. Deceased appears to have made these statements shortly after the difficulty, as a part of the res gestae. He stated to them that John (appellant) cursed him; and he struck John; and that then John went for his bowie knife, and stabbed him. So that deceased's statement to Yarbrough evidently referred to his statement to other witnesses as to how the homicide occurred, and the jury must have so understood it. It may be that, strictly speaking, the testimony of Yarbrough himself as to the declaration of deceased being of an abstract and fragmentary character was not admissible, but when it is referred to the other statements of deceased, and in connection therewith, the jury could not have been misled by it; but understood from other testimony of deceased in connection with that given through Yarbrough, that, in the opinion of deceased, appellant cut him for nothing, as he did not consider his quarreling with appellant and his striking appellant any cause for appellant cutting him with the knife. In connection with the facts stated to which the jury must have referred it, we fail to see how is could have injured appellant. The motion for rehearing is overruled.

*Motion overruled.*