SAM WASHINGTON v. THE STATE.

No. 3891.   Decided May 13, 1908.

**Murder—Charge of Court—Means Used—Deadly Weapon.**

Where upon trial for murder the evidence showed that there was no sign of any wound on the body of the deceased, and that she was probably killed by a stick of stove wood which was not necessarily a deadly weapon; and the court among other matters charged the jury that every person is presumed to intend the natural consequences of his own acts, it was reversible error not to have instructed the jury under article 717 Penal Code, that if the instrument used was one not likely to produce death it was not to be presumed that death was designed, unless from the manner in which the instrument was used such intention evidently appeared.

Appeal from the Criminal District Court of Harris.   Tried below before the Hon. J. K. P. Gillaspie.

Appeal from a conviction of murder in the first degree; penalty, imprisonment in the penitentiary for life.

The opinion states the case:

No brief on file for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.—On question of deadly weapon: Shaw v. State, 34 Texas Crim. Rep., 435; Hatton v. State, 31 Texas Crim. Rep., 586; Hardy v. State, 36 Texas Crim. Rep., 400; Wilson v. State, 37 Texas Crim. Rep., 156; Gallaher v. State, 28 Texas Crim. App., 247.

RAMSEY, JUDGE.—On the 19th day of January of this year the body of Mittie Washington was found in Buffalo Bayou in the City of Houston in an advanced state of decomposition, clad only in an undershirt.   A short time after this appellant was indicted for the murder of the said Mittie Washington, who was his wife.   The parties had for some years been married, and until a short time before the death of the wife had lived in Colorado County.   From the evidence they seemed not to have gotten along very well, and there was some proof that the deceased had carried on illicit relations with other men, particularly with one Buck Wicks, and that appellant had moved with his family to Houston with a view of escaping and avoiding the attentions of Wicks. It is his claim and contention that soon after their removal to Houston that one Chat Allen became too attentive to his wife.   On the trial the State offered in evidence a written confession made by appellant under the statute in which he stated in substance that he had killed his wife about the 6th of January, 1908; that he struck her with a round stick of stove wood twice on the left side of the head; that soon after she died he and one Wells Gafford carried her body to the bayou and put it in the bayou.   On the trial he became a witness in his own behalf, and testified, among other things, that he had had frequent disturbances with

his wife growing out of her improper conduct in respect to other men; that on the day of her death he saw Chat Allen go out of his back gate, and he had talked about this incident with his wife; that on the night that he killed her they had had a considerable discussion of their former differences; that she returned about dark, and they talked until between nine and ten o'clock, and finally his wife said, "Well, we might just as well settle this thing right now; I am going to kill you to night or you will kill me," and at that time she got the razor and came after him with the razor in her hand; that he run around on the other side of the stove, and she came around upon that side; that he was on first one side and then the other of the stove, and while in this position he reached around and got a stick of stove wood and at this moment she was right close up to him, right along by his side, and he hit her twice on the head, the second lick knocking her down. The testimony contains three references to this stick of stove wood with which it is claimed the blow was inflicted. In one place in the statement of facts it is referred to as "a stick of stove wood"; at another time it is stated, "It was a small piece of dry stove wood about as large around as my wrist, about two feet long." In the written confession offered in evidence the stick is referred to as a round stick of stove wood. The statement further is that about the time or soon after he killed his wife the witness Gafford came along, and that the two carried the body of his wife to the bayou into which it was thrown.

In his charge to the jury the court under appropriate instructions submitted murder in the first degree, murder in the second degree, manslaughter, self-defense, and the issue of aggravated assault. In general, the charge of the court is correct and is in many respects an exceptionally clear charge.

We think, under the facts of the case, there is one error for which the case must be reversed. After submitting the issues of murder in the first degree, murder in the second degree, manslaughter, and self-defense, the court instructed the jury as follows: "Every person is presumed to intend the natural and probable consequences of his own acts; and if you believe the defendant intended to kill the deceased, and used means reasonably calculated to effect that end; then if you find his act was not justifiable, it was one or the other of the offenses concerning which you have been heretofore instructed, according to the state of mind in which the killing was done; but if you have a reasonable doubt whether the defendant meant to kill his wife, or have a reasonable doubt whether he used means which were naturally and ordinarily calculated to kill her, but believe that his act in striking her was not justifiable, and that he struck her with a weapon which was calculated to inflict upon her great bodily injury, you will find him guilty of the offense of aggravated assault and battery, and assess his punishment at a fine of not less than $25 nor more than $1,000, or by imprisonment in the county jail for not less than one month nor more than two years, or by both such fine and imprisonment." We believe that this

charge is erroneous in that the court failed to give in connection there-
with the substance of article 717 of the Penal Code of this State. That
article is as follows: "The instrument or means by which a homicide is
committed are to be taken into consideration in judging of the intent
of the party offending; if the instrument be one not likely to produce
death, it is not to be presumed that death was designed, unless from the
manner in which it was used such intention evidently appears." This
view is supported by the decision of this court in the case of Nichols v.
State, 24 Texas Crim. App., 137. In that case Nichols was indicted
for the murder of one Lewis Schmidt, and was convicted of murder
in the first degree, and his punishment assessed at confinement in the
penitentiary for life.. It was shown that he threw a rock at Schmidt
which struck him and from which he died on the following day. The
·blow produced concussion of the brain from which death resulted.
There was proof in the case of threats by Nichols and some prior alterca-
tion between the parties. It was in evidence that this rock was about
the size of a man's hand. In passing on that case Judge White de-
livering the opinion of the court, says: "A rock or stone about the size
of a man's fist was the weapon with which appellant struck the de-
ceased the blow which caused the death, and, whilst it is proven that
the death ensued from the means used, it is not proven that the stone
was necessarily a deadly weapon, and the fact that appellant intended
to kill can only be deduced from antecedent circumstances and the re-
sult of effects of the blow he inflicted. In brief, these antecedent facts
are that defendant had threatened to get even with Schmidt bcause he
refused to pay the full amount defendant claimed to be due him. De-
fendant followed him several blocks, and, when an opportunity offered,
he threw the stone, striking deceased on the back of the head, and at a
time when deceased did not see or know of his whereabouts.

. "Under the facts developed, we are of opinion that the jury should
have been instructed in conformity with the provisions of article 612
(now 717) Penal Code, which declares that, 'the instrument or means
by which a homicide is committed are to be taken into consideration
in judging of the intent of the party offending; if the instrument be
one not likely to produce death it is not to be presumed death was de-
signed, unless from the manner in which it was used such intention evi-
dently appears.' It was the intent which was the essential point in the
case, and the jury, in arriving at it, should have been instructed fully
in the provisions of the law which furnished the criterion by which
it should be ascertained." Now, in this case not only was there no charge
containing the substance of article 717, but the jury were in terms in-
structed, that every person is presumed to intend the natural and prob-
able consequences of his own acts. The proof showed that there was no
sign of any wound on the body of deceased, though there is some sug-
gestion in the record that decomposition was so advanced that signs of
a blow might not have been observable. It is elementary and thoroughly
well settled that the court must charge on every theory having any sup-

port in the evidence, and that, too, without reference to the probability or improbability of such testimony. In view of the character of the weapon used by which the death of deceased was inflicted, it cannot be said that the stick was necessarily a deadly weapon. This court has held that a black-jack fence pole, although used for a rail, is not necessarily a deadly weapon. Wilson v. State, 15 Texas Crim. App., 150. It is stated that such pole might have been so large and heavy as to be harmless in the hands of a man, or it might have been so small or so rotten as to be not at all dangerous. Under none of the definitions of a deadly weapon was the court below justified, nor would we be justified, in holding that a stick of stove wood, described as large around as one's wrist and about two feet long would of necessity be a deadly weapon. The only cases in which it has been held that it was not necessary to give in charge the substance of article 717 are those where of necessity, the weapon considered with reference to the manner and means of its use, as, for instance, a loaded pistol fired into the body of deceased was a deadly weapon. In the case of Connell v. State, 46 Texas Crim. Rep., 259; 81 S. W. Rep., 746, Judge Henderson, speaking for the court, seems in terms to recognize that a stick is not to be classed as a deadly weapon. In that case he says: "If the weapon is not deadly, the intention to take life cannot be inferred but must evidently appear, and where the weapon is not of a deadly character the court should always charge article 717, Penal Code, 1895." But he adds, "We know of no case where this article is required to be given in charge unless the weapon used was not of a deadly character such as a club, a stick or a very small knife." In the case of Campos v. State, 50 Texas Crim. Rep., 102; 95 S. W. Rep., 1042, Judge Davidson, speaking for the court, says: "Usually it may be said that article 717 does not apply unless where the intent is to be judged in part from the instrument used. It is necessary sometimes to give the statute in charge in order to properly guard the legal rights of a defendant. If the weapon be not one per se deadly in its character, then the manner of its use may become a potent factor in regard to the intent. If there be an issue in the case as to whether the party intended to kill, or even if it was a deadly weapon that brought about the death, or if the weapon is not necessarily deadly, but death does result, then it may be necessary to give this in charge to guard appellant's rights in the case. As was said in Burnett's case, 46 Texas Crim. Rep., 116; 79 S. W. Rep., 550: 'Where a party uses an instrument not likely to produce death by the manner and means of its use, but death does occur, this statute may become a part of the law. But as we understand, it never applies unless the intent is an issue in the case.'" This language was used in connection with a death caused by the use of a bowie knife which was recognized and treated as a deadly weapon. See also Newsome v. State, 75 S. W. Rep., 296; Shaw v. State, 34 Texas Crim. Rep., 435.

We think in view of all the facts, and particularly in view of the charge of the court to the effect that every person is presumed to intend

the natural consequences of his own acts, that the court should have instructed the jury in substance that if the instrument was one not likely to produce death it was not to be presumed that death was designed, unless from the manner in which the instrument was used such intention evidently appeared. There is, as we believe, no other error in the charge of the court or in the proceedings on the trial, but for the reason indicated we think appellant is entitled to a trial in which the substance of article 717 as applied to the facts should be given. Therefore, the cause should be and the same is hereby reversed and remanded.

*Reversed and remanded.*