## Howard Crow v. The State.

### No. 4470. Decided January 27, 1909.

**1.—Murder—Charge of Court—Murder in Second Degree—Deadly Weapon.**

Upon trial for murder where the evidence showed that the instrument used by which deceased was killed was a baseball bat, the court erred in charging the jury that if they believed from the evidence beyond a reasonable doubt that said baseball bat was an instrument that would have ordinarily produced death without regard to the manner of its use and that the same was per se a deadly weapon without regard to the manner of its use, etc., to find the defendant guilty of murder in the second degree.

**2.—Same—Charge of Court—Manslaughter—Deadly Weapon.**

Upon trial for murder where the evidence showed that defendant struck deceased a fatal blow with a baseball bat, the court erred in charging the jury that if they believed beyond a reasonable doubt that said baseball bat was an instrument that would have ordinarily produced death without regard to the manner of its use, that is that said baseball bat was per se a deadly weapon, etc., to find the defendant guilty of manslaughter.

**3.—Same—Intent to Kill—Deadly Weapon.**

Where upon trial for murder the evidence showed that the defendant killed the deceased by inflicting upon his head a blow with a baseball bat and the State did not undertake to prove that said instrument was a deadly weapon, and the facts surrounding the case very strongly tended to prove a want of intent to kill on part of defendant, the court should have charged on defendant's intent to kill, and not have assumed that said baseball bat was a deadly weapon without regard to the manner of its use.

Appeal from the District Court of Cass. Tried below before the Hon. P. A. Turner.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*O'Neal & Figures,* for appellant.—Cited cases in the opinion.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder in the second degree, his punishment being assessed at five years confinement in the penitentiary.

The facts substantially show that on the day of the homicide deceased, appellant and others had been attending or engaged in a game of baseball. Appellant was a boy about fifteen years of age, and the deceased twenty-one years of age. The boys of the neighborhood had given the deceased the nick name of "Ragerty." Sometimes he would take this in a good humor, and at other times become offended. That during the same evening and prior to the difficulty, deceased had had some words with some of the boys with reference to the nickname. That after the game had broken up and they were all en route home scattered along the roadside for several hundred yards, one of the witnesses, by the name of Thomas, and two or three of the other boys were in front. Appellant was walking about forty yards behind Thomas and those with him, talking to two men on horseback. Deceased was some thirty or forty yards behind appellant. Appellant remarked to the two men who were on horseback, that "Ragerty," meaning deceased, said he was going to settle the matter of calling him "Ragerty" next Saturday night, at the school house or church house. Deceased had cut him a green pine stick about three feet long and about one and a half inches in diameter while at the baseball grounds, anticipating trouble with some of the boys. When appellant remarked to the two men on horseback that Ragerty said what he was going to do the following Saturday night, deceased ran towards appellant with the pine stick drawn in a threatening attitude. Some one hallooed at appellant to run, that deceased was after him with a stick. He did run with deceased closely in pursuit with the stick drawn. Appellant at the time had nothing. He overtook Thomas and the crowd with him and jerked a baseball bat off of the shoulder of Thomas and ran around the crowd with deceased in pursuit. Finally he stopped as did deceased—one having the baseball bat and the other the green pine stick. Deceased turned and walked four or five steps from appellant, laid his stick, mits and baseball on the ground, then turned and walked back to where appellant was standing, and said, "I will show you that I am not afraid of you." Appellant and another witness testified that when deceased returned and made the remark, deceased either run his hand in his pocket or attempted to do so, and when he did this appellant struck deceased with his baseball bat one

lick. Deceased fell. Appellant threw down the baseball bat, stooped over deceased, and began to fan him with his hat. Some one remarked to appellant, "Howard, you have killed him." Appellant immediately repied, "I did not intend to hit him so hard," and asked some one to get water. He also assisted in getting deceased in a near-by residence. It seems to be rather a conceded fact that deceased chased appellant something like forty yards. Both deceased and appellant were making good time. And it is also uncontroverted that appellant was unarmed until he overtook Thomas, and secured the baseball bat. There is some evidence going to show that the baseball bat weighed two and a fraction pounds. The blow was inflicted on the head and produced a fracture, pressing the bone upon the brain. The deceased died some hours subsequent to the infliction of the blow. This perhaps is a sufficient statement of the case.

Several errors are suggested with reference to the court's charge, and especially to those portions submitting murder in the second degree and manslaughter. That portion of the charge in regard to murder in the second degree is as follows: * * * "If you believe from the evidence beyond a reasonable doubt that the defendant, in Cass County, Texas, on or about the 15th day of August, 1908, unlawfully struck Green Hanes with a baseball bat, and thereby killed him; and if you further believe from the evidence beyond a reasonable doubt that said baseball bat was an instrument that would reasonably have produced death without regard to the manner of its use, that is, that said baseball bat was per se a deadly weapon, without regard to the manner of its use; and if you further believe that the evidence does not establish express malice beyond a reasonable doubt, etc., defendant would be guilty of murder in the second degree." The charge with reference to manslaughter in this connection is as follows: "* * * If you further believe from the evidence beyond a reasonable doubt that said baseball bat was an instrument that would have ordinarily produced death without regard to the manner of its use, that is, that said baseball bat was per se as a deadly weapon, without regard to the manner of its use, and that said defendant was at the time in a sudden passion aroused by adequate cause, as the same is explained in this charge, and that the defendant was not justified on the ground of self-defense, etc., he would be guilty of manslaughter." We think the exceptions are well taken. A baseball bat is not per se a deadly weapon, and especially is it not a deadly weapon when considered without reference to its use. A weapon may be or may not be a deadly one according to how it is used. We have many cases in regard to this phase of the law. It has been held that a black-jack fence pole is not necessarily a deadly weapon. Wilson v. State. 15 Texas Crim. App., 150. So as to an ax. Melton v. State, 30 Texas Crim. App., 273. A gun

or pistol used simply as an instrument or bludgeon with which to strike is not necessarily a deadly weapon. Pierce v. State, 21 Texas Crim. App., 540. Speaking for the court, in Danforth v. State, 44 Texas Crim. Rep., 105; 69 S. W. Rep., 159, Judge Brooks uses the following language: "Under Penal Code, article 717, providing that the instrument by which a homicide is committed is to be considered in judging of the intent of the party, and, if the instrument be one not likely to produce death, it is not to be presumed that death was designed, unless such intent appears from the manner in which it was used. It was error to fail to instruct, on a prosecution for murder with an iron pipe half an inch in diameter and thirty inches long, that an intent to kill at the time the blow was struck must be shown to convict of homicide, the instrument used not being as a matter of law a deadly weapon." This is in accordance with numerous other decisions.

Article 719 of the Penal Code also provides, where a homicide occurs under the influence of sudden passion, but by the use of means not in their nature calculated to produce death, the person killing is not deemed guilty of the homicide, unless it appears there was an intention to kill, but the party from whose act that death resulted may be prosecuted for and convicted of any grade of assault and battery. This seems to be the settled law, unless it is in a case where the injury inflicted was done in a cruel manner, or in a manner showing an evil and cruel disposition, or that it was the design of the person offending to kill. It has been held that the means used by the accused may be looked to for the purpose of determining his intent. If a deadly weapon is used in a deadly manner, the inference is almost conclusive that he intended to kill. If the weapon be one not dangerous or be not used in a deadly manner, then the intention to kill must be shown by other facts and circumstances. As we understand the facts of this case, the State was forced to rely upon the fact that appellant struck with a baseball bat, and that the result of that was ultimately to produce death as a means of showing his intent to bring about a homicide. The facts and circumstances occurring at the time, just before and immediately after, tend very strongly to show a want of purpose or an intent to kill. It was a sudden difficulty in which deceased chased appellant for forty yards or more with a pine stick three feet long, and one and a half inches in diameter, when appellant was unarmed. Upon reaching Thomas appellant seized the baseball bat and a moment or two afterwards struck appellant one blow. We are of opinion that the court should not have instructed the jury that the weapon was per se a deadly weapon or conveyed to them the belief of the court that it was per se a deadly weapon. The State did not undertake to prove it to be a deadly weapon further than has been stated. We are further of the opinion that a weapon is not per se a deadly

weapon without reference to the manner of its use. A gun would not be such a weapon nor a pistol, when used as a bludgeon. The manner of the use of a weapon might indicate its deadly character, and the intent of the party using it. For instance, a gun fired at a party within carrying distance is a deadly weapon, but if the same gun was used as a bludgeon, the inference or presumption of its deadly character would be greatly minimized and might require additional facts. These charges seem also to be erroneous, in that they authorize a conviction without reference to the intent on the part of appellant in the use of the weapon. The weapon itself not being one per se deadly and there being evidence of the fact that appellant did not intend to kill, it was error on the part of the court to omit in this connection to charge on appellant's intent in striking. Under the statutes quoted this was a very important element in this case. The intent of a party is often a very strong and controlling fact. A person may accidentally kill; if he intended to kill it would relieve the case of the phase of accidental homicide. If the blow was inflicted simply as to ward off danger or a threatened attack, or a real attack where excessive force was used and under impulse of the moment, it still might not be culpable homicide. In such case, the intent might be a controlling factor. In other words, where the evidence shows there was a want of intent to bring about a homicide, or there was an issue as to this fact, this phase of the testimony should not be ignored or charged against appellant in the instructions to the jury.

There are other charges somewhat dependent upon those discussed. We think the discussion of those above mentioned sufficiently indicates the view of the law upon which murder and manslaughter should be charged, therefore, the other phases are not discussed.

For the errors indicated, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*