JOHN HOOVER v. THE STATE.

No. 5743.   Decided May 19, 1920.

**Murder—Deadly Weapon—Charge of Court—Rule Stated—Intent to Kill.**

In instances under the evidence, the instrument used in producing the homicide was not a deadly weapon, or in which there was an issue upon that point, this court with marked uniformity, has held that upon defendant's request his theory of an absence of intent to kill should be put before the jury in a manner clearly informing them as to the law, and a failure to do so in the instant case was reversible error. Following Washington v. State, 53 Texas Crim. Rep., 53, and other cases.

Appeal from the District Court of Commanche. Tried below before the Honorable J. H. Arnold.

Appeal from a conviction of murder. Penalty: six years imprisonment in the penitentiary.

The opinion states the case.

*Hampton, Harris & Hampton, George L. Sullivan* and *Goodson & Nabors,* for appellant.

*Alvin M. Owsley,* Assistant Attorney General, for the State.

MORROW, JUDGE.—The appeal is from a sentence of confinement in the penitentiary for six years for the offense of murder. The deceased was a supervisor of the construction of a "tank farm" in one of the oil districts, the construction work being done by employees of independent contractors. Appellant and his father had been such employees, and on Saturday preceding the homicide on Tuesday, an altercation took place on the premises. In this altercation insulting epithets were exchanged between the deceased and the appellant; some blows were struck, the deceased obtaining and exhibiting a pistol and ordering the appellant to leave and to refrain from coming back on the premises also ordering appellant's father to cause this to be done. There were mutual threats made at the time, and evidence of their repetition later, those of the deceased being communicated to the appellant. Evidence *pro* and *con* touching the disposition and reputation of the deceased as a man of violence was introduced. There was

also evidence that appellant had been informed after the difficulty on Saturday that the deceased was armed. The immediate scene of the homicide was at the depot of the village, near which was situated a restaurant belonging to the father of appellant and a store kept by a witness named Barnes. Appellant testified that he had business at the depot, and while standing there the deceased passed, brushing the arm of the appellant, and then called for the railroad agent. The appellant then walked to the restaurant, and picked up a stick which was used for packing ice in an ice cream freezer. Taking the stick to the depot for the purpose of protection, he laid it down on the ground. On his return the deceased was not observed by him, and he entered into conversation with others, and while so engaged this occurred:

"I looked up at the door, and Mr. Breen was standing in the door like, looking right down at me with his hand in his side pocket, and I looked back down again, and about that time he came out the door, and as he came out I grabbed the stick, and as he stepped on the engine, I hit him. The reason I hit him was because I thought he was going to shoot me. Just as Mr. Breen stepped on the engine he caught it with both hands, and then he dropped his right hand, and was sorter turning toward me, and just as he turned I hit him up above the ear somewhat. I did not intend to kill him, but hit him to keep him from getting his gun and shooting me. When I hit him he fell off the engine to the ground, and I threw the stick away and caught hold of his hands. I didn't know how badly he was hurt, and thought he might shoot me. When I found he was badly hurt I laid his hands down."

There were several eye witnesses introduced by the State, one of them measurably corroborating the appellant's theory of a demonstration by the deceased. Most of them, however, exclude by their testimony this theory. The court in his charge took cognizance of the evidence raising the issues of murder, manslaughter, and self-defense based upon a demonstration following communicated threats.

In his instruction to the jury, the court embodied a part of Article 1147, P. C., as follows: "If the instrument be one not likely to produce death, it is not to be presumed that death was designed, unless from the manner in which it was used such intention evidently appeared."

The homicide resulted from one blow upon the head of deceased, struck by the appellant, using a wooden stick about three feet long, three inches in diameter at one end, and tapering to two inches at the other end, somewhat in the shape of a baseball bat. The weight of the stick is not given. Under numerous expressions of the opinions of this court, the stick in question was not *per se* a deadly weapon. Among these are Crow v. State, 55 Texas Crim. Rep., 202, in which the instrument was a baseball bat. Others in which sticks of wood of varying sizes were used will be found in Wilson v. State, 15 Texas Crim. App., 155; Washington v. State, 53 Texas Crim. Rep., 483;

Boyd v. State, 28 Texas Crim App., 137; Fitch v. State, 37 Texas Crim. Rep., 502; Shaw v. State, 34 Texas Crim. Rep., 442; Hamilton v. State, 60 Texas Crim. Rep., 258, 131 S. W. Rep., 1127. Similar rulings with reference to other instruments used as a bludgeon will be found in Honeywell v. State, 40 Texas Crim. Rep., 199; Danforth v. State, 44 Texas Crim. Rep., 111; Skidmore v. State, 43 Texas, 93; Peacock v. State, 52 Texas Crim. Rep., 435. The fact that death results from the use of the weapon does not change the rule stated as to its character. The trial court, in recognition of the application of this rule to the instant case, gave the charge mentioned. Appellant insists, however, that there was a fatal omission in the charge in its failure to instruct the jury affirmatively that unless they found that in the manner used the stick was a deadly weapon, a conviction of murder could not result unless the jury believed beyond a reasonable doubt that at the time the blow was struck he had the specific intent to kill the deceased. This view was presented in several special charges, which were refused, and represents the converse of the proposition that was submitted. Article 1149, P. C., provides that where a homicide occurs under the influence of sudden passion, but by the use of means not in their nature calculated to produce death, the person killing is not guilty of a homicide unless it appears that there was an intention to kill, but the party from whose act the death resulted can be convicted for any grade of assault and battery. Speaking on this subject, Presiding Judge White, in the case of Hill v. State, in which the same point was involved, said in substance: "The otherwise admirable charge did not submit the alternative proposition pointed out in Article 614 (now 1149) as to the law where there was no intention to kill. From a careful investigation of all the facts as they are stated in the record we are of the opinion that the defendant was entitled to have this view of the law submitted to the jury in a plain, pointed, and affirmative manner. If he was not actuated by an intention to kill, then the killing could not be murder."

In instances in which under the evidence the instrument used in producing the homicide was not a deadly weapon, or in which there was an issue upon that point, this court, with marked uniformity, has held that upon appellant's request his theory of an absence of intent to kill should be put before the jury in a manner clearly informing them as to the law. Washington v. State, 53 Texas Crim. Rep., 483; Crow v. State, 55 Texas Crim. Rep., 202; Merka v. State, 82 Texas Crim., Rep., 569; Branch's Crim. Law of Texas, sec. 434, cases listed therein. In the instant case the proof was undisputed that the instrument used was a stick, and that but one blow was struck. The appellant testified that he did not intend to kill, and we think the evidence was such that the court was not warranted in refusing to instruct the jury in an affirmative way upon this theory of the appellants.

The omission in the charge, which we have pointed out, requires a reversal of the judgment, which is ordered.

*Reversed and remanded.*