TOM HILLIARD v. THE STATE.

No. 5487. Decided February 25, 1920.

**1.—Aggravated Assault—Insufficiency of the Evidence—Deadly Weapon.**

Where a pistol was used as a bludgeon the same was not a deadly weapon, and where upon trial of aggravated assault with a deadly weapon, the evidence showed that the pistol was used as a bludgeon, and in self-defense, was also presented towards defendant's assailant, the conviction for aggravated assault cannot be sustained. Following: Peacock v. State, 52 Texas Crim. Rep., 435, and other cases.

**2.—Same——Evidence—Expert Testimony—Hypothetical Question.**

That a physician or any other witness may testify that a certain weapon used by a strong man could be a deadly weapon, and inflict death or serious bodily injury, is not sufficient as a hypothetical question in a case of this character, such question should be confined to the case as made in accordance with the facts as to what defendant did. Following: Harden v. State, 51 Texas Crim. Rep., 562, and other cases.

Appeal from the County Court of DeWitt. Tried below before the Hon. J. L. Boal, judge.

Appeal from a conviction of aggravated assault; penalty, a fine of $200 and ninety days confinement in the county jail.

The opinion states the case.

*Chambers, Watson* and *Wilson,* for appellant.—On question of insufficiency of the evidence and deadly weapon: Ward v. State, 70 Texas Crim. Rep., 393, 159 S. W. Rep., 281; Powdrill v. State, 62 Texas Crim. Rep., 442, 138 S. W. Rep., 114; Chew v. State, 23 Texas, 230; Thomas v. State, 40 id., 562; Hunt v. State, 9 Texas Crim. App., 166; McLendon v. State, 66 S. W. Rep., 553; Stephenson v. State, 33 Texas Crim. Rep., 162.

*E. A. Berry,* Assistant Attorney General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of aggravated assault and his punishment assessed at a fine of $200 and imprisonment in the county jail for ninety days.

The evidence discloses that Adams, the alleged assaulted party, a white man, and appellant, a negro, had known each other practically all their lives, lived neighbors and were always on friendly terms. Appellant's daughter and another negro girl at his home had gone something like one hundred yards from the residence after wood. This was in the evening. A son of Adams and a relative drove by in an auto and accosted the girls and made indecent proposals. The girls returned to the house and informed their brother, a boy about sixteen years of age, of what had occurred. Shortly after this occurrence the two boys in the auto returned, passing the house, and the brother of the girl accosted them and demanded to know the reason of their conduct. They denied it. Appellant's daughter, standing by, informed them of the fact that they did make such indecent proposals, and further stated that if they denied it they lied. They got out of the car and when they did the girl struck one of them with a stick. The boys informed their father of what occurred, and when appellant returned that night about eight o'clock from the town of Cuero the girl informed him. The next morning, on account of the situation of things, appellant being a negro and the others white people, appellant wanted to have things adjusted without further trouble and was going to see Mr. John Adams, who seems to have been his adviser in most things. Appellant went to his brother Bob Hilliard and inquired for his older son, who was working with Bob Hilliard and was informed he was in the back of the field. Appellant went to see him, and in returning got his pistol from a neighbor to whom he had loaned it shortly before for the purpose of killing dogs which had been worrying and annoying him. In passing him this party

returned the pistol to appellant. The occasion of his returning seems to have been due to the fact that three of the Adamses and a man named Barnes had gone to Bob Hilliard's seeking appellant with reference to this same matter. Bob Hilliard told them where appellant was, and they stated they were going to see him. Bob Hilliard told them to wait and he would send for him, and he did and appellant came to where they were at Bob Hilliard's house. Appellant, at the request of the assaulted party and another relative, went off about thirty or forty steps to talk over the matter. The prosecuting witness Adams wanted to know why the girl had treated his son the way she did, and appellant told them about the conduct of the boys as the girl had informed him. This brought up a contradiction, and appellant is said to have stated that if the boys told it as the prosecuting witness stated that he would contradict their word and prosecuting witness' word also. This is the State's view of it. Appellant's evidence is to the contrary and puts vigorous language in the mouth of Adams. When this occurred, however Adams picked up a rock and prepared to throw it. There seems to have been a great many rocks at that point. The witnesses differ as to the size of the rock picked up by Adams. They were squatted down and when this occurred both got up. Appellant reached for his pistol, and in the melee he struck prosecuting witness one lick with the pistol. This struck his arm and glanced and cut a scalp wound on the head about half inch in length and just through the skin. It was not a serious wound, and no physician was called, nor did Adams suffer any inconvenience from it or go to bed. The testimony shows it was not a serious wound, and the blow as struck was rather a light one from the evidence. The State's contention was that he struck at the head of Adams with the pistol. However, that may be, the physical facts show that he was struck on the arm and the blow evidently glanced and struck his head. It is also in evidence that when this occurred appellant held his pistol on Adams, and at this juncture John Adams came and requested that they leave and they all separated. This is a sufficient statement of the case to dispose of the issues presented.

We are of opinion this evidence does not show an aggravated assault under the long line of decisions rendered by this court. A pistol used as a bludgeon is not a deadly weapon *per se.* See Branch's Crim. Law, Sec. 82, p. 42, where a great number of opinions are collated. Skidmore v. State, 43 Texas, 93; Jenkins v. State, 30 Texas Crim. App., 379; Key v. State, 12 Texas Crim. App., 506; Pierce v. State, 21 Texas Crim. App., 547; McLendon v. State, 66 S. W. Rep., 554; Stephenson v. State, 33 Texas Crim. Rep., 162, 25 S. W. Rep., 784; Peacock v. State, 52 Texas Crim. Rep., 435, 107 S. W. Rep., 346. It was held in McLendon v. State, *supra,* that if defendant strikes slightly with the pistol, and could have struck more licks, it shows he was not using it as a deadly weapon. The

evidence is uncontroverted that appellant could have further used it and could have fired it, but did not; and it is also in evidence that the lick was induced by reason of the fact that Adams picked up one or two rocks for the purpose of throwing them at appellant, and appellant struck to ward off this anticipated attack. The question is fully settled in Texas that the instrument or weapon used to strike with is not *per se* a deadly weapon, nor is it the law that if death results, therefore the conclusion is that the weapon used was a deadly weapon. See Crow v. State, 55 Texas Crim. Rep., 202, 116 S.. W. Rep., 52; Washington v. State, 53 Texas Crim. Rep., 481, 110 S. W. Rep., 751, and cases already cited, and also for a large number of collated cases see Branch's Crim. Law, Sec. 82, p. 42. There is no question, as we understand this record, that Adams made the first demonstration in picking up the rock with the intention of throwing it. The evidence is in conflict as to whether he placed his arm in position to throw the rock at the time the blow was struck with the pistol or not, but he intended to throw it as he himself testified, and was deterred, it seems from the evidence, by the fact that appellant presented his pistol. There was no further attempt on the part of appellant to use the pistol otherwise than hold it where he might use it if further attack was made.

There was an exception taken to the ruling of the court admitting what is termed in the bill the expert testimony of a physician. In view of the disposition of the case on the facts, that matter is not discussed further than to state the evidence as narrated in the bill was not admissible. That a doctor or any other witness may testify that a certain weapon used by a strong man could be a deadly weapon, that is, that it could inflict death, or serious bodily injury, is not sufficient as a hypothetical question in a case of this character. A hypothetical case, if one is to be used, must be in consonance with facts. It is not what the party could have done with the pistol, but it must be confined to the case as made in accordance with the facts as to what he did. The doctor knew nothing of the facts one way or the other, but he was testifying simply to what a strong man might do with a pistol if used in a certain way. A physician may testify as to the nature of a wound and its probable cause and effect. This was decided in Waite v. State, 13 Texas Crim. App., 169 and Hardin v. State, 51 Texas Crim. Rep., 562. He was not testifying as a physician in reference to wounds; he never saw them and knew nothing of them. His testimony was confined simply to a hypothetical case that a strong man with a pistol used as a bludgeon could inflict serious bodily injury or even death. We are of opinion that the doctor's testimony under this record and as given carried the doctrine too far. If it be treated as a hypothetical question, then it must be based on facts. If the opinion of the witness is not on a hypothetical case above stated, the doctor may, if he has examined the wounds and knows about

them, state whether or not the injury was serious or not. Almost any character of weapon may be used with deadly effect. A small pocket-knife may be so used, but it would depend upon the occurring facts and circumstances. We think, therefore, that the testimony of the doctor as given should not have been permitted to go to the jury.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*