## STATE v. PETERSON.

No. 5414.   Decided December 4, 1933.   (27 P. [2d] 20.)

*J. R. Haas,* of Salt Lake City, for appellant.

*Joseph Chez,* Attorney General, and *S. D. Huffaker,* Deputy Attorney General, for the State.

ELIAS HANSEN, Justice.

The defendant was tried, convicted, and sentenced to serve an indeterminate term in the state prison upon an information which charged:

"That the said N. Peterson on the 4th day of April, A. D. 1932, at the County of Salt Lake, State of Utah, did willfully, unlawfully and feloniously with intent to do bodily harm to W. H. Wood and without just cause or excuse, and without any considerable provocation, make an assault in and upon the person of the said W. H. Wood with a certain deadly weapon called a pistol, loaded with gunpowder and

leaden bullets, which deadly weapon the said N. Peterson then and there had and held in his hand, and aimed the said deadly weapon at and upon the said W. H. Wood. * * *"

He appeals. By his assignments of error defendant seeks a reversal of the judgment upon the grounds: (1) That the evidence was insufficient to support the verdict and judgment, in that it failed to show that the pistol in question was, at the time charged, loaded with gunpowder and leaden bullets; and (2) the court erred in the admission of evidence tending to show that other and separate offenses were committed by the defendant. Six witnesses testified at the trial. Four were called and testified for the state. Defendant and one Mr. Kelly testified on behalf of the defendant. The witnesses were agreed upon these facts: That about 2 o'clock on the morning of April 4, 1932, defendant called Vernon Scott on the telephone and made an appointment to meet him. Pursuant to the appointment, the defendant and Mr. Kelly went in an automobile to an apartment house in Salt Lake City where Mr. Scott was residing. Scott was induced to get into the automobile. They rode around in Salt Lake City for a time, and then went out to the southeast of the city. Mr. Kelly drove the automobile. While out on the automobile ride defendant informed Scott that some one had taken twenty-six gallons of whisky from a building which was situated near the apartment house where Scott was residing. Defendant insisted that Scott had either assisted in taking the whisky or knew who had taken it. For a time Scott denied any knowledge of who had removed the whisky, but finally stated that a Mr. Wood, who was conducting the Oaks Hotel at South Temple and First West streets in Salt Lake City, had taken the whisky. Upon being so informed, defendant directed Kelly to drive to the Oaks Hotel, which he did. They arrived at the hotel about 4 o'clock. Mr. Scott was acquainted with Mr. Wood, who conducted the hotel. Because of that fact, defendant directed Mr. Scott to call to Mr. Wood when they reached the hotel. Upon arriving at the entrance of the hotel, the front

door was locked. Mr. Wood, who slept near the entrance door, was awakend by their demand for admittance. Wood refused to open the door, and asked them to come to a window which was nearby. They refused, and insisted upon the door being opened. Wood secured a revolver and fired a shot through the door. Thereupon Mr. Scott went to the window, and for the first time Mr. Wood recognized Scott as one of those who demanded admittance to the hotel. Mr. Wood went to the window where Scott was standing and laid his revolver on a shelf near the window. Some one reached through the window and picked up the revolver. At about that time defendant aimed a revolver at Mr. Wood and demanded that Wood return the whisky. Thereupon the four men, defendant, Kelly, Scott, and Wood, left the hotel, entered the automobile, and took a ride around the city. While out riding defendant repeatedly demanded the return of the whisky. For a time Wood denied any knowledge of the whisky, but finally promised the defendant that he would return the whisky during the forenoon of that day. Thereupon Wood returned to the hotel and the defendant went to his room. Mr. Wood did not return any whisky, but, on the contrary, informed the officers of what had occurred. The defendant was arrested about 9 o'clock. The charge set out in the information heretofore quoted in this opinion was filed against him.

There is a conflict in the testimony in the following particulars: Mr. Scott testified in substance that, while he was riding with the defendant and Kelly before they went to the Oaks Hotel, defendant repeatedly said that he (Scott) would not go home that night unless he told who took the whisky; that, when he (the defendant) and Kelly reached the door at the entrance of the Oaks Hotel, defendant poked him (Scott) in the back with something and demanded that he call Mr. Wood; that defendant attempted to break down the door at the entrance of the hotel when Mr. Wood refused them admittance; that, when Wood saw him (Scott) at the window, Mr. Wood

said, "My God, Bud did I shoot you?"; that, when Wood laid his revolver on the shelf, defendant picked it up, pointed it at Wood, and commanded him to stick up his hands, come out of the hotel, and get into the automobile. On cross-examination Mr. Scott testified that he told the defendant that Wood had taken the whisky to escape further torture by the defendant. Mr. Wood's version of what occurred at the hotel and immediately thereafter was in substance as follows: That when the defendant, Kelly, and Scott demanded admittance to the hotel he believed they intended robbery; that the door at the entrance to the hotel was partly broken in before he fired the shot; that, when he saw Scott at the window, he thought it all a joke, and, because of the blood on Scott's face, he believed he was shot; that, when he laid his revolver on the shelf, defendant reached through the window and picked it up; that, when the defendant pulled the revolver on him, he told the defendant that all of the money was in the office and to come inside and get it; that defendant responded that they were not looking for money, it was whisky they wanted; that defendant kept him covered with the revolver practically all the time that they were out riding in the automobile; that defendant hit him over the head a number of times with the revolver; that defendant placed the barrel of the revolver against his (Wood's) head, and while so placed stated that, if he (Wood) did not tell where the whisky was, defendant would blow his (Wood's) brains out; that he told the defendant he would return the whisky to escape being beaten up; that he knew nothing about the whisky. While Mr. Wood was on the witness stand the first day, he repeatedly testified that defendant used his own revolver. On the second day he testified that the revolver which defendant used was his (Wood's) revolver. The version of the defendant as to what occurred at the hotel was to the following effect: That, when he went to the window, Mr. Wood's back was turned towards the window; that he commanded Wood to stick up his hands and bring his revolver with the handle

thereof turned towards defendant, and lay it on the shelf; that Wood complied with the demand; that, when the revolver was laid on the shelf, Mr. Kelly picked it up; that the revolver which he (defendant) had was not loaded; that, as soon as Mr. Wood laid his revolver on the shelf, he said that they had all better leave the hotel and talk the matter over because the officers may have heard the shot fired and were likely to come at any time. Defendant denied striking Wood with the revolver. It also appeared that defendant's right hand was so paralyzed that he had but slight use thereof. The testimony of Mr. Kelly in the main corroborates that of defendant. When the defendant was arrested a few hours after the occurrence complained of, a revolver was found in his room. It was not loaded, and no loaded cartridges were found in his room. It was stipulated that Mr. Wood would testify that four of the chambers of his revolver were loaded when he laid it on the shelf.

Upon substantially the foregoing testimony, counsel for the defendant contended before the trial court, and here contends that the evidence was insufficient to support a verdict finding the defendant guilty of an assault with a deadly weapon. The court below, at the request of the defendant, instructed the jury to the effect that they could not find the defendant guilty of the crime of assault with a deadly weapon unless they found, beyond a reasonable doubt, that the revolver used by the defendant on the occasion in question was loaded. No complaint was made of the instruction, but it is urged that the evidence does not support a finding that the revolver used by the defendant was loaded. Defendant's contention in such respect cannot be successfully maintained. It is conceded that Mr. Wood's revolver was loaded. While Mr. Wood's testimony is in conflict as to which revolver the defendant used, the testimony of Mr. Scott is that the defendant used Mr. Wood's revolver. Moreover, Mr. Wood testified that defendant threatened to blow his (Wood's) brains out with the revolver which was used by the defendant. The testimony of Mr. Scott, if believed by

the jury, as evidently it was, supports a finding that the revolver used on the occasion in question was loaded, and hence a deadly weapon.

During the trial, numerous objections were interposed to testimony tending to show that defendant made an assault on Mr. Scott before they went to the Oaks Hotel, and also to the testimony which tended to show defendant made an assault on Mr. Wood after they left the hotel. The learned trial judge permitted Mr. Scott to testify as to what defendant said, but excluded testimony as to what the defendant did before they went to the Oaks Hotel. Evidence was admitted over defendant's objections to both what the defendant said and did after the four men left the hotel. Complaint is made of such rulings. Our attention is directed to a familiar doctrine that the defendant was on trial for but the offense charged, and that the evidence tending to show that he committed other offenses unconnected with that for which he was on trial could not be properly received in evidence. To the general rule there are certain well-established qualifications or exceptions. While evidence tending to show that a defendant has committed a crime wholly unconnected with the charged crime may not be received in evidence the rule does not exclude evidence which tends to establish any of the constitutive elements of the crime of which the defendant is accused in the case on trial, even though such evidence tends to prove that the defndant has committed other crimes. 8 R. C. L. § 195, p. 199 et seq.; 2 Jones' Commentaries on Evid. (2d Ed.) § 362, pp. 1172-1175. In the instant case it is clear that the defendant set out on the morning in question for the sole purpose of securing the return of the whisky which he claimed was stolen. He himself so testified. To constitute the crime charged, the assault must be made not only with a deadly weapon but it must be "without just cause or excuse, and without any considerable provocation." The jury would have no means of determining whether the assault was or was not made "without just cause or excuse,

and without any considerable provocation," without being advised of the facts and circumstances which surrounded the making of the assault. Evidence of what occurred immediately preceeding the assault, being relevant to an issue in the case, was properly received in evidence, notwithstanding such evidence tended to show the commission of another crime or crimes.

It is also contended on behalf of the defendant that he was on trial for what occurred at the hotel, and that it was error for the trial court to admit evidence of what occurred after the four men left the hotel. If the assault had terminated at the hotel, there would be merit to that contention. The evidence offered by the state, however, does not justify the conclusion that the acts which the state relied on for a conviction terminated at the hotel. According to the testimony of Mr. Wood, he was covered with a revolver from the time it was first drawn on him until he agreed to return the whisky. Such also in effect is the testimony of Mr. Scott. If the testimony of Mr. Wood and Mr. Scott in such respect is to be believed, what occurred in the automobile was but a continuation of what occurred in the hotel. The facts in this case do not bring it within the rule relied upon by the defendant.

The judgment is affirmed.

STRAUP, C. J., and FOLLAND, EPHRAIM HANSON, and MOFFATT, JJ., concur.