## Commonwealth v. Jones

*Jon D. Fox, Assistant District Attorney*, for Commonwealth.
*Edwin P. Smith*, for defendant.

STANZIANI, *J.*, April 12, 1978—

### CASE SUMMARY

Jessica Jones, also known as Geraldine Palmer, defendant herein, was convicted on May 11, 1977, of aggravated assault with a deadly weapon, recklessly endangering another person, terroristic threats, and tampering with a witness by force in a civil case. Motions for new trial and in arrest of judgment were filed on May 13, 1977. After argument before the court en banc, these motions were denied on December 27, 1977. On January 23, 1978, defendant was sentenced to not less than five nor more than 10 years on all counts in the State Correctional Institution at Muncy. Defendant now enters

this appeal asserting various errors of law in the trial and sentencing proceedings which are dealt with in this opinion.

## FACTS

On December 29, 1976, defendant was charged by Cheltenham Township police with simple assault, aggravated assault, involuntary deviate sexual intercourse, terroristic threats, recklessly endangering another, indecent assault, open lewdness, tampering with a witness, possession of an instrument of crime, firearms violations, theft, receiving stolen property and disorderly conduct. Of these charges, defendant was eventually tried on involuntary deviate sexual intercourse, indecent assault, aggravated assault and lesser included offenses, reckless endangerment, terroristic threats, possession of weapon with intent, and tampering with a witness.

Defendant was arrested and arraigned on December 31, 1976. A preliminary hearing was held on January 6, 1977, before District Justice Reed at which time a prima facie case was found to exist as to all charges except ownership of a firearm by a former convict. Criminal informations were filed by the Commonwealth on February 4, 1977, and a jury trial was conducted before the undersigned on May 3, 4, 5, 9, 10 and 11, 1977.

With respect to the alleged errors raised by defendant's motions, the record reveals the following facts:

On May 3, prior to trial, an in camera hearing was conducted by the court to determine whether evidence of the victim's prior sexual conduct with

another witness was admissible under the Act of December 6, 1972, P.L. 1482, as amended, 18 Pa.C.S.A. §3104. Defense counsel offered to prove that the victim and this witness were lesbian lovers and that this relationship was admissible to impeach their credibility and establish the victim's homosexual tendencies. The court ruled this evidence was irrelevant and inadmissible under the above-cited statute.

Viewed in the light most favorable to the Commonwealth, the evidence at trial established that on the afternoon of December 21, 1976, defendant and victim became involved in a teasing dispute at the Princess Lounge, at Broad Street and Hunting Park Avenue in Philadelphia, where the victim was employed as a barmaid. During the course of the teasing, defendant took the victim's Christmas tip box. In response, the victim took defendant's car keys which were laying on the bar. After the victim relinquished defendant's keys in exchange for her tip box, defendant went behind the bar and took both the victim's purse and her tip box. Defendant then left the lounge with the victim's purse and tip box, but later returned to the bar with the tip box and offered to drive the victim to defendant's house where she could reclaim her purse.

After arriving at her home, defendant and victim had several drinks while talking with various members of defendant's family. When these people had left or gone to bed, defendant turned on the victim and threw her on the floor. She then went upstairs and returned with a small caliber pistol, removed the clip, extracted all but one bullet and reinserted the clip in the pistol. She then threatened to blow defendant's head off and asked her if she had ever been pistolwhipped or raped. Defendant

then struck the victim twice across her forehead in rage over the fact that the victim had agreed to testify against her in an upcoming arbitration hearing in Philadelphia. The victim was then ordered upstairs, and forced at gunpoint to submit to defendant's sexual demands during the course of which she was bitten by defendant on the upper thigh and in the vagina.

Several hours later after defendant fell asleep, the victim, wearing only a coat, boots and a hat, escaped from defendant's house by jumping out a first floor window. She then ran to the house of her friend, Sarah Willingham, who lived at 1808 Pennfield Street in Philadelphia, where she applied first aid for her head and thigh injuries and called the police.

At the conclusion of the Commonwealth's case, defense counsel moved for dismissal of count 6 of bill 115.3 charging aggravated assault with a deadly weapon (18 Pa.C.S.A. §2702(a)(4)) and bill 115.10, tampering with a witness (18 Pa.C.S.A. §4907). These demurrers were denied by the trial judge.

During defendant's case-in-chief, Jessica Jones testified that she had never struck or sexually assaulted the victim. To the contrary, she stated that she had pushed the victim out of her house after discovering her making a homosexual advance toward her oldest daughter, Carmen, age 20. The victim was alleged to have entered the girl's bedroom while she was asleep and fondled the young woman's breasts, at which point she awoke and called for her mother's assistance. The daughter also testified to this event, but neither mother nor daughter reported the incident to the police.

• • •

## ISSUE 3.

Under 18 Pa.C.S.A. §2702(a)(4): "A person is guilty of aggravated assault if he . . . attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon." Defendant maintains that the evidence presented at trial did not support a conviction under this section because she struck the victim with the pistol instead of using it as a firearm. She also advances the rather tenuous argument that since the definition of a "deadly weapon" under 18 Pa.C.S.A. §2301 requires "[use] . . . likely to produce . . . serious bodily injury," the Commonwealth was required to prove a serious bodily injury in order to convict her under section 2702(a)(4).

Defendant's first contention requires a determination of whether a loaded firearm is a deadly weapon under the Pennsylvania Crimes Code when used as a bludgeon or club. The question as far as this court can determine is one of first impression in Pennsylvania and is not without some difficulty. Section 210.0 of the Model Penal Code upon which 18 Pa.C.S.A. §2301 is based provides no comments from the drafting committee. Cases from other jurisdictions, primarily in the southwest or western United States, state that a pistol or a loaded pistol is a deadly weapon per se: See Walker v. State, Tex. Cr. app., 440 S.W. 2d 653 (1969); State v. Powell, 238 N.C. 527, 78 S.E. 2d 248 (1953); Barr v. State, 146 Tex. Cr. R. 178, 172 S.W. 2d 322 (1942); Hadnot v. State, 110 Tex. Cr. R. 109, 7 S.W. 2d 566 (1928); State v. Peterson, 83 Utah 74, 27 P. 2d 20 (1933). Other cases, however, indicate that when used as a club, a pistol is not a

deadly weapon per se and must be shown to be capable of inflicting great bodily harm: Hilliard v. State, 87 Tex. Cr. R. 15, 218 S.W. 1052 (1920); Chapman v. State, 126 Tex. Cr. R. 645, 73 S.W. 2d 536 (1934).

Under 18 Pa.C.S.A. §2301 a deadly weapon is defined in three categories, the first of which is "any *firearm*, whether loaded or unloaded." The second category is "any *device designed as a weapon* and capable of producing death or serious bodily injury." The third category is "*any other device or instrumentality* which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury." Defendant's contention would require that the phrase in the last category beginning with the word "which" modify all three categories. Such a construction is not proper because each of the three categories of deadly weapons is set off by a comma and the conjunction "or." In this context, "or" must be read disjunctively thereby limiting the modifying phrase to the third category.

This construction is also apparent from the nature of the weapons sought to be classified as deadly. Firearms under this statute constitute a category unto themselves and are therefore deadly per se. This conclusion is further supported by the fact the weapon may be loaded or unloaded. The second category includes other weapons capable of inflicting serious bodily injury, such as a knife or blackjack; while the third category includes any device or instrumentality which by its use in a particular situation was intended to cause death or serious bodily injury. Examples of this third category would be the use of a car to run down a victim

or the use of a stick or rock to strike a victim. Only in this, the second and third categories, is it appropriate to examine the manner in which the item was used and its potential for causing serious injury.

The determination that a firearm is a deadly weapon per se under section 2301 is also dispositive as to defendant's argument regarding the failure of the Commonwealth to establish serious bodily injury. As noted above, only where a weapon is within the second or third category does the prosecution have to prove its manner of use could cause death or serious injury. It should be emphasized that even when the weapon is within the latter two categories, the statute is satisfied if the Commonwealth can show *potential* to produce death or serious bodily injury. Actual death or serious bodily injury is not required. Where a firearm is used, not even potential for serious bodily injury need be established. Such legislation is clearly justified as a deterrent to the use of firearms for criminal purposes. Therefore since the evidence clearly indicated the bodily injury required for aggravated assault with a deadly weapon under section 2702, the trial court properly rejected defendant's demurrer to that charge.

## ISSUE 4.

Defendant next alleges error in the court's denial of a demurrer to the bill of information 115.10, tampering with a witness. It is claimed the bill does not conform to any subsection of section 4907 and was at variance with the evidence presented at trial. The bill specifically states: " . . . did unlawfully and intentionally threaten to kill one Gwendolyn McDougal because she was going to appear as a

witness against Jessica Jones in a civil action." Defendant argues that the allegation infers retaliation against the victim because she was a witness, not an intent to prevent her from testifying. This assertion flies in the face of the language in the bill which says, "she was going to appear as a witness." The application of section 4907 is clearly prospective in that it protects witnesses in official proceedings which are *"pending* or *about to be instituted."* Section 4908, on the other hand, is obviously retrospective in that it protects witnesses from retaliation for anything lawfully done in the capacity of a witness. The record leaves no question that defendant's attack on the victim occurred before she testified at the arbitration hearing. It can readily be inferred that the attack was made with the intent to induce the victim not to testify. Indictments must be read in a common sense manner and are not to be construed in an overly technical sense: Commonwealth v. Pope, 455 Pa. 384, 317 A. 2d 887 (1974). Having read bill 115.10 in that fashion, the court did not err in denying defendant's demurrer.

It is also asserted the Commonwealth did not establish that the arbitration hearing was an "official proceeding" for purposes of section 4907. It is the determination of this court, however, that under section 4907 an official proceeding begins at the earliest with the filing of a complaint with the magistrate and ends, at the latest, with the final disposition of the last appeal: State v. Howe, 247 N.W. 2d 647 (N.D. 1976). In that case, the court held that under a North Dakota statute relating to threats with intent to influence another's testimony or cause a witness to withhold testimony, an official proceeding began with the filing of the complaint.

48

The court noted that the North Dakota statute was patterned after the Act of June 25, 1948, 62 Stat. 769, as amended, 18 U.S.C.A. §1503, and that Federal cases had applied their statute to preliminary hearings and grand jury investigations. Comments to the ALI Model Penal Code state that section 241-6(1), on which 18 Pa.C.S.A. §4907 is patterned, incorporate, inter alia, the provisions of 18 U.S.C.A. §§1503 and 1505. Accordingly, the Federal precedents relied on in State v. Howe, supra, are equally applicable to the provisions of section 4907. Since Sarah Willingham testified to swearing out a complaint against defendant and Judge Morris C. Starr testified to the official nature of the hearing, this court can only conclude that the arbitration hearing was an "official proceeding." Defendant's demurrer, therefore, was properly denied.